O

# United States District Court
# Central District of California

| | |
|---|---|
| BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARSHALL FILM, LLC, <br><br> Defendant. | Case № 2:24-cv-07966-ODW (MAAx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [15]** |

## I. INTRODUCTION

Plaintiffs Board of Directors of the Motion Picture Industry Pension Plan, Board of Directors of the Motion Picture Industry Individual Account Plan, and Board of Directors of the Motion Picture Industry Health Plan bring this action against Defendant Marshall Film, LLC for breach of contract and violation of the Employee Retirement Income Security Act ("ERISA") § 515, 29 U.S.C. § 1145.  (Compl. ¶¶ 12–21, ECF No. 1.)  Plaintiffs seek to recover delinquent contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs.  (*Id.*, Prayer.)  Marshall Film failed to appear and defend, and Plaintiffs now move for entry of default judgment.  (Mem. P. & A. ISO

Mot. Default J. ("Motion" or "Mot."), ECF No. 15-1.) For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion.[1]

## II. BACKGROUND

Plaintiffs Boards of Directors are the governing bodies of their respective jointly administered Labor-Management Trust Funds, pursuant to the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). The Motion Picture Industry Pension Plan and the Motion Picture Industry Account Plan are employee pension benefit plans as defined under ERISA. (Compl. ¶ 4.) Also as defined under ERISA, the Motion Picture Industry Health Plan (together with the Pension Plan and the Account Plan, the "Plans") is an employee welfare benefit plan. (*Id.*) The Plans are multiemployer plans as defined by ERISA. (*Id.*) Plaintiffs are fiduciaries of the Plans, pursuant to ERISA. (*Id.*) The Plans were established pursuant to Collective Bargaining Agreements ("CBAs") between employers, employer associations, and the International Alliance of Theatrical Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO ("IATSE"). (*Id.*) At all times relevant, Marshall Film was an employer within the meaning of ERISA. (*Id.* ¶ 5.)

On or about December 20, 2015, Marshall Film and IATSE entered into two agreements: (1) Project Agreement—Low Budget Theatrical Agreement 2014–2016, and (2) Single Production Signatory Memorandum Agreement (together, "the Agreements"). (*Id.* ¶ 8.) On or about March 8, 2016, Marshall Film executed an IATSE Trust Acceptance. (*Id.* ¶ 9.) By executing the Trust Acceptance, Marshall bound itself to the Declarations of Trust establishing the Plans ("Trust Agreements"). (*Id.* ¶ 9.) The Trust Agreements obligated Marshall Film to forward a weekly remittance report and contributions owed to the Plans for the total hours worked by or guaranteed to all covered employees. (*Id.* ¶ 10.) Contributions are considered delinquent if not received within ten working days from the date due. (*Id.*) If delinquent, the Trust Agreements

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

provide that Marshall Film would be liable for (1) contributions owed; (2) interest at one percent a month until payment; (3) liquidated damages equal to the greater of 20% of contributions or amount of interest due; and (4) expenses of collection, including accountants' fees, auditors' fees, attorneys' fees, and costs. (*Id.* ¶ 11.)

On October 23, 2020, the Plans completed an audit of Marshall Film's records. (*Id.* ¶ 14.) The Plans found that Marshall Film had failed to pay $8,115.70 in contributions for hours worked by Marshall Film's employees during the period of October 4, 2015, to August 12, 2017. (*Id.*) The audit cost $6,075.00. (*Id.* ¶ 15.) On November 10, 2021, Plaintiffs demanded payment for the unpaid contributions, liquidated damages, interest, and audit costs, totaling $21,372.72. (*Id.* ¶ 17.) Marshall Film did not respond. (*Id.*) On December 20, 2021, Plaintiffs made a final demand. (*Id.*) Marshall still did not respond, and the delinquent contributions and assessments remain outstanding. (*See id.*)

Accordingly, on September 18, 2024, Plaintiffs brought this action against Marshall Film to recover delinquent contributions, accruing interest, liquidated damages, and working assessments owed (the "Obligations"), as well as attorneys' fees and costs incurred in collecting the Obligations. (*See id.*, Prayer.) Plaintiffs assert two causes of action: (1) breach of the Agreements and the Trust Agreements, and (2) violation of ERISA due to the breach of the Agreements and the Trust Agreements. (*Id.* ¶¶ 12–21.)

On November 6, 2024, Plaintiffs served Marshall Film. (Proof Service Compl., ECF No. 10.) However, Marshall Film did not appear or defend the case. Accordingly, upon Plaintiffs' request, on November 27, 2024, the Clerk of Court entered Marshall Film's default. (Default, ECF No. 14.) On May 13, 2025, Plaintiffs filed this motion for default judgment against Marshall Film. (Mot.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a

court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true," except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make detailed findings of fact when entering default judgment, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

### IV.   DISCUSSION

Plaintiffs satisfy the procedural requirements for default judgment, establish that entry of default judgment against Marshall Film is substantively appropriate, and demonstrate that the requested relief is warranted.

#### A.   PROCEDURAL REQUIREMENTS

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Plaintiffs meet these requirements. On November 27, 2024, the Clerk entered default against Marshall Film as to Plaintiffs' Complaint. (*See* Default.) Counsel for

Plaintiffs submits declaration testimony that Marshall Film is not a minor or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Decl. Kathryn J. Halford ISO Mot. ("Halford Decl.") ¶¶ 2–3, ECF No. 15-11.) Finally, although service of the Motion is not required because Marshall Film has not appeared, Plaintiffs nonetheless served Marshall Film with the Motion. (Proof Service Mot., ECF No. 16.)

Thus, Plaintiffs satisfy the procedural requirements for entry of default judgment.

**B.    *EITEL* FACTORS**

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": "(1) the possibility of prejudice to the plaintiff"; "(2) the merits of plaintiff's substantive claim"; "(3) the sufficiency of the complaint"; "(4) the sum of money at stake"; (5) the possibility of a material factual dispute; "(6) whether the default was due to excusable neglect"; and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). Thus, the Court considers these factors first.

*1.    Second & Third* Eitel *Factors*

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Plaintiffs assert two causes of action for payment of the Obligations based on Marshall Film's breach of the Agreements: a breach of contract, (Compl. ¶¶ 12–19), and a violation of ERISA § 515, 29 U.S.C. § 1145, (*id.* ¶¶ 20–21). As Plaintiffs sufficiently

state a claim under ERISA, and that claim is inextricably intertwined with the breach of contract claim, the Court needs only address the ERISA violation claim.

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 826 (9th Cir. 1984) (holding that employer's failure to contribute agreed-upon amount to pension fund was an ERISA violation). If the employer fails to make contributions as required, the plan or a plan fiduciary may bring an action to recover the unpaid contributions. *See* 29 U.S.C. § 1132(d)(1); *see, e.g.*, *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1227 (N.D. Cal. 2014).

Plaintiffs allege that, pursuant to the Agreements, Trust Agreements, and ERISA, Marshall Film was an employer obligated to submit monthly reports and contributions to the Plans under ERISA § 515. (Compl. ¶¶ 5, 10.) They further allege that Marshall Film failed to submit reports and pay contributions for work performed by its employees during the period of October 4, 2015, to August 12, 2017. (*Id.* ¶¶ 14, 21; Decl. Chris Tashchyan ISO Mot. ("Tashchyan Decl.") ¶ 11, ECF No. 15-2.) Taken as true, Marshall Film's failure to submit reports and pay the required contributions violates ERISA § 515.

Thus, Plaintiffs sufficiently plead a meritorious claim against Marshall Film to recover delinquent contributions under ERISA, and therefore the second and third *Eitel* factors favor entry of default judgment.

### 2.     Remaining Eitel *Factors*

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Marshall Film. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. *See Eitel*, 782 F.2d at 1471–72. Plaintiffs would suffer prejudice absent entry of default judgment because they would otherwise have no recourse for Marshall Film's unpaid contributions.

Further, as discussed below, the sum of money Plaintiffs seek is directly proportionate to the amount Marshall Film owe and failed to pay.

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of entering default judgment. *See id.* Plaintiffs' allegations are accepted as true on default, and Marshall Film may not now "challenge the accuracy of the allegations in the complaint." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Plaintiffs support their claims with evidence demonstrating Marshall Film owes the Plans certain unpaid contributions, and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Further, nothing in the record suggests Marshall Film's failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. *See Eitel*, 782 F.2d at 1471–72. However, because Marshall Film's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Marshall Film on Plaintiffs' Complaint.

## C.    REQUESTED RELIEF

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiffs seek to recover unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. (Mot. 6.) The relief Plaintiffs seek is consistent with that requested in the Complaint and is thus permissible. (*See* Compl. ¶¶ 14–15, Prayer ¶¶ 1–5.)

Additionally, once liability is established through a defendant's default, a plaintiff must establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560.

Plaintiffs cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002).

In an ERISA action to recover delinquent contributions, a successful plaintiff is entitled to the following forms of relief:

(A) the **unpaid contributions**,

(B) **interest** on the unpaid contributions,

(C) an amount equal to the greater of--

    (i) interest on the unpaid contributions, or

    (ii) **liquidated damages** provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable **attorney's fees and costs** of the action, to be paid by the defendant, **and**

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphases added).

Plaintiffs seek an award totaling $38,935.09, consisting of $8,115.70 in unpaid contributions, $8,792.10 in interest, $8,792.10 in liquidated damages, and $13,235.19 in attorneys' fees and costs. (Mot. 6)

    *1.*    *Unpaid Contributions*

Under ERISA, upon judgment in favor of a plan, "the court shall award . . . the unpaid contributions." 29 U.S.C. § 1132(g)(2); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (requiring mandatory award under § 1132(g)(2) once plaintiff establishes the employer is delinquent, the plan provides for the award, and the court enters judgment against the employer). As allegations regarding damages are not accepted as true for purposes of a default judgment, a plaintiff must submit evidence

supporting the damages sought. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Plaintiffs seek unpaid contributions and working assessments totaling $8,115.70. (Mot. 6.) In his declaration, Chris Tashchyan, the Plans' Director of Employer Services, states that the Plans conducted an audit of Marshall Film's records. (Tashchyan Decl. ¶ 11.) Tashchyan also attaches a record of this audit, which confirms the $8,115.70 figure. (*Id.* Ex. 8 ("Audit"), ECF No. 15-10.) The Court finds this evidence adequate to support the requested sums. *See Dirs. of Mot. Picture Indus. Pension Plan v. Little Hercules, LLC*, No. 2:13-cv-02405-MWF (AGRx), 2013 WL 12305506, at *3 (finding audit records sufficient to establish amount of unpaid contributions).

Accordingly, the Court finds that Plaintiffs are entitled to unpaid benefit contributions in the total amount of **$8,115.70**.

  2.  *Interest and Liquidated Damages*

Plaintiffs also seek interest totaling $8,792.10 and liquidated damages totaling $8,792.10. (Mot. 6.)

ERISA requires an award of prejudgment interest, "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). The Agreements and Trust Agreements provide for interest assessed at 1% per month on the delinquent contributions. (Tashchyan Decl. ¶ 10.F.) Assessing these interest rates against the above noted delinquencies, Plaintiffs calculate the prejudgment interest as $8,792.10. (*Id.* ¶ 12.) The Court finds Plaintiffs have provided adequate support for these figures. (*See id.*)

ERISA also requires an award of liquidated damages for delinquent contributions. The Court is required to award liquidated damages in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C). The Trust Agreements also provide for liquidated damages in an amount equal to the total amount of accrued interest.

(Tashchyan Decl. ¶ 13.) As the Court has found that Plaintiffs provide adequate support for their interest figure, the Court also finds Plaintiffs have provided adequate support for their liquidated damages figure.

Accordingly, Plaintiffs are entitled to recover **$8,792.10** in interest and **$8,792.10** in liquidated damages.

3. *Audit Costs*

Plaintiffs also seek costs of conducting the audit in the amount of $6,075.00. (Mot. 6.) Under the Agreements and the Trust Agreements, Marshall Film is obligated to pay the costs of an audit that discloses a delinquency, underpayment, or other erroneous reporting. (Tashchyan Decl. ¶ 10.C.) The Ninth Circuit has held that audit costs are recoverable under ERISA. *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988). The Court finds that Plaintiffs provide adequate support for their figure. (*See* Tashchyan Decl. ¶ 14; Audit.) Moreover, courts in this District have found similar audit costs appropriate and reasonable. *See, e.g.*, *Little Hercules*, 2013 WL 12305506, at *4 (finding an award of $9,900.00 for audit costs appropriate).

Accordingly, Plaintiffs are entitled to recover **$6,075.00** in audit costs.

4. *Attorneys' Fees & Costs*

Plaintiffs also seek their reasonable attorneys' fees of $5,995.00 and costs of $1,165.19. (Mot. 6.)

Under ERISA, upon judgment in favor of a plan, "the court shall award . . . reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2); *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984). In this District, attorneys' fees awarded on default judgment are calculated according to the fee schedule provided in Local Rule 55-3. C.D. Cal. L.R. 55-3. However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment," as Plaintiffs have done here, and the Court "shall hear the request and render judgment for such fee as the Court may deem reasonable." *Id*.

To determine reasonable fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), courts use a "hybrid lodestar / multiplier approach." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). To calculate the lodestar amount, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust the figure based on a variety of factors.[2] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 430 n.3 (1983)). The lodestar figure is presumptively reasonable, and it should therefore be adjusted only in "rare" and "exceptional" cases. *Edmo*, 97 F.4th at 1168–69 (collecting cases). The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Plaintiffs seek $5,995.00 in attorneys' fees, which is the total of $4,774.00 already incurred and $1,225.00 that Plaintiffs' counsel expected to incur for the motion hearing. (Halford Decl ¶¶ 12–13.) These fees are based on hourly rates of $350.00 for all attorneys, and $140.00 for paralegals, with a total of 26.30 hours expended during the lifetime of this litigation. (Halford Decl. Ex. 9 ("Fee and Cost Invoices"), ECF No. 15-12.)

Although it is unfortunate that Plaintiffs do not support these fees with case law or evidence supporting their reasonableness, the Court agrees, based on its own

---

[2] These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Edmo*, 97 F.4th at 1168 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

experience, that these rates are reasonable. The Court similarly finds the hours expended well supported by contemporaneous billing records. (*See id.*); *Hensley*, 461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the hours worked and rates claimed"); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (requiring "detailed time records justifying the hours claimed"). Plaintiffs do not request a multiplier, and the Court finds one is not warranted in this case. Also, because the Court did not hold a hearing on this Motion, the Court subtracts $1,225.00 from the requested total. Accordingly, the Court awards Plaintiffs **$4,770.00** in attorneys' fees.

Plaintiffs also seek $1,165.19 in litigation costs, including filing fees for the two times Plaintiffs have filed this case and costs of service on Defendant. (Mot. 6; Halford Decl. ¶ 12.) Plaintiffs submit the billing records reflecting the breakdown of these costs. (Halford Decl. ¶ 12; Fee and Cost Invoices.) However, Plaintiffs offer no support for the notion that they can recover costs from a prior case. As such, the Court deducts the filing fees from the first case ($402.00) and costs from Plaintiffs' attempted service ($68.50) and awards Plaintiffs **$694.69** in costs. *See* 28 U.S.C. §§ 1920, 1923; C.D. Cal. L.R. 54-3.

    5.    *Summary of Relief*

In summary, the Court finds that Plaintiffs are entitled to recover $8,115.70 in unpaid contributions, $8,792.10 in prejudgment interest, $8,792.10 in liquidated damages, $6,075.00 in audit costs, $4,770.00 in attorneys' fees, and $694.69 in costs. Plaintiffs are therefore entitled to recover the total sum of **$37,239.59**.

### V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Entry of Default Judgment against Marshall Film. (ECF No. 21.) The Court **AWARDS**

Plaintiffs the total sum of **$37,239.59** in principal, attorneys' fees, and costs. The Court will issue judgment in accordance with this order.

**IT IS SO ORDERED.**

October 3, 2025

_____
             **OTIS D. WRIGHT, II**
        **UNITED STATES DISTRICT JUDGE**